IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | Civil No. 1:12-CV-537 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| LT. SIPE, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

I.      Statement of Facts and of the Case

A.      Dawn Marie Ball's Litigation History

This case, which comes before us on a motion for summary judgment, typifies that sad circumstances of Dawn Ball's life, a life which is now entirely marked by unreasoned anger and a cynical desire to use litigation as a vexatious vehicle to lash out at others.  Indeed, this case reminds us that in  many ways Dawn Ball's current circumstances inspire both profound sorrow and concern.

Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that

1

she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Furthermore, Ball is also an inmate who has reported to the Court that she engages

in multiple episodes of destructive, self-defeating and senseless behavior.

Much of this institutional misconduct is marked by disturbing, excretory

behavior.  Indeed, a constant refrain throughout many of Ball's lawsuits is her

fascination with her own bodily wastes.  For example, recurring themes in Ball's

lawsuits include Ball's penchant for smearing feces on herself, her clothes, her

property, and her cell, as well as her destruction of her own clothing, and her use of

her clothing to plug her toilet and flood her cell with water and human waste.  Ball

is also, by her own admission, an inmate with a propensity for sudden, explosive

rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-

CV-2240 (M.D.Pa.).   In this complaint, Ball describes an episode in which a

discussion regarding the aesthetic qualities of a piece of cornbread escalated in a

matter of moments into a profanity-laced wrestling match over a food tray.

Ball's bizarre and self-destructive behavior is also marked by repeated acts of

destruction of her own clothing.  As we have previously noted:

> One recurring theme in this array of lawsuits has been a disputatious
> cycle of conflict between Ball and her jailers.  As part of this cycle of
> behavior Ball has been cited for misconduct, oftentimes involving
> destruction or misuse of her prison garb, which has on occasion been
> found to have plugged the toilet in her cell, resulting in cell flooding.

Prison officials have then placed Ball on clothing restrictions, and cited her for misconduct. As result of these clothing restrictions, Ball has lost her entitlement to a prison jumpsuit. Nonetheless when hearings have been scheduled on Ball's misconduct citations which often relate to the destruction or misuse of jumpsuits, she has demanded a jumpsuit before attending any hearing, or has insisted that the hearing be conducted at her cell. Prison officials have then treated Ball's demands as tantamount to a refusal to appear, and have conducted the disciplinary hearing in her absence. Ball, in turn, has sued prison staff, asserting that they have denied her due process. This theme is a recurring refrain in Ball's litigation and is reflecting several lawsuits filed by Ball. . . . .

Ball v. Cooper, No. 1:11 CV 1833, 2012 WL 2389763, at *3 (M.D. Pa. June 1, 2012) report and recommendation adopted, No. 1:11 CV 1833, 2012 WL 2389760 (M.D. Pa. June 25, 2012). See, e.g., Ball v. Oden, No. 1:09 CV 847, 2012 WL 7162069, at *1 (M.D. Pa. Dec. 6, 2012) report and recommendation adopted, No. 1:09 CV 00847, 2013 WL 634024 (M.D. Pa. Feb. 20, 2013) Ball v. Sipe, No. 1:11 CV 1830, 2012 WL 2389759, at *3 (M.D. Pa. May 31, 2012) report and recommendation adopted, No. 1:11 CV 1830, 2012 WL 2389901 (M.D. Pa. June 25, 2012): Ball v. Hill, 1:09–CV–773, 2012 WL 4069748 (M.D.Pa. Aug.9, 2012) report and recommendation adopted, 1:09–CV–00773, 2012 WL 4069737 (M.D.Pa. Sept.17, 2012); Ball v. Famiglio, 1:11–CV–1834, 2012 WL 1886676 (M.D.Pa. Mar.14, 2012) report and recommendation adopted, 1:11–CV–1834, 2012 WL 1886673 (M.D.Pa. May 23, 2012); Ball v. Sisley, 1:11–CV–877, 2011 WL 7940267

(M.D.Pa. Dec.20, 2011) report and recommendation adopted, 1:11–CV–877, 2012 WL 1867276 (M.D.Pa. May 22, 2012).

Prior to revocation of her *in forma pauperis* privileges due to Ball's repeated abuse of those privileges, Ball was a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at various times Ball has had more than 25 lawsuits pending before this Court.[1] Sadly, though, Ball is also a prodigiously unsuccessful litigant, who has had numerous prior lawsuits dismissed either as frivolous, for failure to exhaust administrative remedies  or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.  The history of repeated, frivolous and meritless

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

litigation in federal court by this plaintiff has now led to court of appeals to conclude that Ball is barred as a frivolous filer under §1915(g)'s "three strikes" rule from proceeding *in forma pauperis* in federal court in the future.  Ball v. Famiglio, 726 F.3d 448, 451 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547, 188 L. Ed. 2d 565 (2014).

It is against this backdrop of angry, feckless litigation, lawsuits inspired by Ball's own sad, unreasoned and unreasoning self-destructive behavior in prison, that we now consider the remaining claims in the instant case.

## B.    Ball's Current Lawsuit

### 1.    Factual Background

Ball's present lawsuit names a single defendant, Lt. Sipe, and alleges in a summary fashion that Lt. Sipe placed Ball in a strip cell on two occasions in July and August of 2010, "for no reasons for a week or so each time." (Doc. 1, p.2.)  Ball also alleges that more than one year later Lt. Sipe ordered her to wear a "see threw [sic] nitegown [sic] out of my cell around 9/2011."  (Id.)  On the basis of these spare allegations Ball contends that her constitutional rights under the Eighth Amendment were violated and seeks compensatory and punitive damages.  (Id.)

The uncontested facts reveal, however, that whatever brief restrictions were placed on Ball's prison attire were imposed in the context of repeated disciplinary findings relating to the persistent and deliberate destruction of her clothing.  Indeed,

5

prison records demonstrate that Ball has an astonishing capacity for institutional misconduct and has amassed 247 institutional misconduct citations since 1997. (Doc. 58, ¶6.)

Between July 2010 and September 2011, Ball committed no less than nine prison infractions involving destruction of her own clothing. Thus, on July 18, 2010, Ball received a misconduct citation after she tore apart her jumpsuit and was witnessed wearing a skirt and halter top she constructed from altered wool blankets. (Id., ¶7.)  Ball refused to attend the hearing relating to this citation and was found guilty of destroying altering, tampering with or damaging property and possession of contraband.  (Id.)  Ball did not appeal this guilty finding.  (Id.)

The following day, July 19, 2010, Ball was placed on a number of restrictions after she was verbally abusive towards staff and attempted to assault Corrections Officer Dymeck with an unknown liquid.  The restrictions included limitations on exercise, shower, shaving, cell cleaning, container, bedding, secure food pass, and mini law library.  (Id., ¶8.)  One week later, on July 26, 2010, Ball was cited for additional misconduct involving destruction of clothing when she received a misconduct citation while she was in an observation cell because she refused to submit to handcuffs, altered her smock into a "sundress" and covered her cell door so she could not be seen.  (Id., ¶9.) Ball refused to attend the hearing on this citation

6

and was found guilty of destroying altering, tampering with or damaging property, refusing to obey an order, possession of contraband and presence in an unauthorized area.  Ball did not appeal this finding of guilt.  (<u>Id</u>.)

Three days later, on July 29, 2010, Ball received yet another misconduct citation after she covered her cell door so she could not be seen and then exposed her breasts to a correctional officer.  Ball refused to attend the hearing and was found guilty of indecent exposure and refusing to obey an order.  Ball did not appeal the guilty finding.  (<u>Id</u>., ¶10.)

Four days later, on August 3, 2010, Ball flushed her jumpsuit down her toilet.  Ball was cited for this misconduct, and following a hearing was found guilty of destroying altering, tampering with or damaging property.  Ball did not appeal this finding of guilt.  (<u>Id</u>., ¶11.)  Two weeks later, on August 17, 2010, Ball was placed on a number of additional restrictions after she refused to submit to handcuffs, destroyed property, was verbally abusive and assaultive towards staff.  These restrictions included limitations on exercise, shower, shaving, cell cleaning and mini law library access.  (<u>Id</u>., ¶12.)

Three days then elapsed before Ball, once again, violated prison rules.  On August 20, 2010, Ball repeatedly refused to come out of her cell for a routine cell security inspection despite orders, triggering what is termed by the Department of

Corrections as an "Extraordinary Occurrence".  Staff was forced to begin planning a cell extraction, which is considered a planned use of force.  Eventually, after Lt. Sipe gave the final order for compliance, Ball complied and placed her hands out of the food pass to be handcuffed.  The movement was completed without incident and Ball was uninjured.  As a result of this episode, Ball received another misconduct citation. (Id., ¶¶13-14.) Ball refused to attend this misconduct hearing and was found guilty of refusing to obey an order and destroying altering, tampering with or damaging property.  Ball did not appeal this finding. (Id.)

Within three days, Ball engaged in further rules infractions involving the destruction of her prison-issued personal property.  On August 23, 2010, Ball received a citation while she was in an observation cell because she covered the windows and tore her blanket.  Ball refused to attend this disciplinary hearing and was found guilty of destroying altering, tampering with or damaging property, a finding which Ball did not appeal or challenge.  (Id., ¶15.)

This incessant misconduct involving destruction and misuse of prison issued clothing continued in 2011.  As a result, on September 21, 2011, Ball was placed on a jumpsuit restriction due to her "constant destruction of jumpsuits."  Ball was provided with a green gown or smock to wear. (Id., ¶16.)  Ball promptly destroyed this smock.  On September 27, 2011, Ball received a misconduct citation after she

flushed her gown down the toilet.  Ball refused to attend the hearing and was found guilty of destroying altering, tampering with or damaging property and lying to an employee, findings which Ball did not contest on appeal.  (Id., ¶17.)

It is against this backdrop of incessant destruction of clothing by Ball that the defendant has moved for summary judgement, arguing that the brief clothing restrictions imposed upon this inmate, who had a penchant for destruction of her own clothing, were reasonable and appropriate and did not violate Ball's constitutional rights.  (Docs. 56-62.)  Ball has now responded to this motion, albeit in a fashion which sheds no light on her constitutional claims while casting a sharp focus on her anger, and malicious motivation in bringing this lawsuit.  (Doc. 67.)  Ball's response to this summary judgment motion makes no intelligible, principled legal argument in support of her claims.  Instead, Ball, sadly, indulges in an angry, unreasoning screed, and is reduced to engaging in an exercise in personal invective.  Yet, while Ball's response does not defend her complaint in any meaningful way, it sheds a stark and tragic light on the frivolous and wholly vexatious nature of her litigation.  Indeed, Ball concedes that her lawsuit is motivated by a completely vexatious pique stating: " I accomplished 1 thing, I made the Dep't. of Corrections waste a hell of a lot of money defending my lawsuits and it makes me very happy knowing that.  So I'm o.k. regardless of the outcome!"  (Doc. 67, p. 3.)  Ball then closes her defense of this

9

lawsuit with an observation which encapsulates the pointless rage, and senseless anger, that has marked the tragic trajectory of her life and litigation, stating: " I at least accomplished the D.O.C. to waste lots of money defending my suits which suits me just find.  This judge, court and D.O.C. Defendants can go to hell!  All of them!" (Id., p. 5.)

With this closing observation by Ball, this motion is now ripe for resolution. For the reasons set forth below, we recommend that the defendant's summary judgment motion be granted.

## II.  Discussion

### A.  Rule 56–The Legal Standard

Defendant Sipe has moved for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P., Rule 56.  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).  The substantive law identifies which facts are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the

material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."  Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996).  Additionally, a party must respond to a hearsay

12

> objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books,

Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### B.    <u>Ball's Claims Fail as a Matter of Law</u>

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment claims, since Ball advances an Eighth Amendment claim Lt. Sipe, alleging that the brief clothing restrictions imposed upon

her following her repeated episodes of destruction of clothing placed her in unconstitutionally harsh conditions of confinement in violation of the Eighth Amendment.

This Eighth Amendment claim is, in turn, judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, and is governed by the same overarching and animating constitutional benchmark.

As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to

inflict unnecessary and wanton pain.  "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344 45 (3d Cir. 2000)

With these tenets in mind we turn to a consideration of the Eighth Amendment claims advanced here by Ball.  "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'  Hudson, 503 U.S. at 9, 112 S.Ct. 995."  Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. 2000).  In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with "evolving standards of decency that mark the progress of a maturing society."  Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)).  Conditions of prison confinement violate the Eighth Amendment only if they "deprive inmates of the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

Thus, this claim requires proof of a both culpable state of mind, and objective proof of physical conditions of confinement which shock the conscious and depart from

minimal civilized standards of life's necessities.  Furthermore, this prison wardrobe dispute arises against the backdrop of case law which recognizes that the courts are particularly reluctant to intervene in inmate wardrobe disputes and have rarely found that such disputes rise to the level of a constitutional infractions, declining to find that inmates have a constitutional right to particular outdoor attire or exercise garb, see Smith v. United States, 432 F. App'x 113 (3d Cir. 2011); holding that the imposition of clothing restrictions on a recalcitrant inmate who engages in multiple episodes of misconduct does not offend the Eighth Amendment, see Trammell v. Keane, 338 F.3d 155 (2d Cir. 2003); and finding that prison officials need not accede to inmate clothing demands in this setting and may treat a refusal to follow staff directions in this regard as a refusal to participate in the disciplinary hearing itself.  See Stanley v. Mason, No. 09-25, 2010 U.S. Dist. LEXIS 30178 (W.D. Mich. Mar. 29, 2010).

Indeed, Ball is well aware of these constitutional considerations, considerations which generally forbid inmates who destroy their own clothing from later complaining that they are subject to brief wardrobe restrictions.  Ball is aware of these settled legal tenets because they have been applied by the courts to dismiss other, similar claims made by Ball in the past.  Ball v. Cooper, No. 1:11 CV 1833, 2012 WL 2389763, at *12 (M.D. Pa. June 1, 2012) report and recommendation adopted, No. 1:11 CV 1833, 2012 WL 2389760 (M.D. Pa. June 25, 2012); Ball v. Sipe, No.

1:11 CV 1830, 2012 WL 2389759, at *12 (M.D. Pa. May 31, 2012) report and recommendation adopted, No. 1:11 CV 1830, 2012 WL 2389901 (M.D. Pa. June 25, 2012).

Judged against these benchmarks, Ball's current claims fail for at least two reasons. First, given the undisputed facts, which show that Ball indulged in repeated, incessant destruction of her clothing and personal property, it cannot be said that brief clothing restrictions rose to the level of a violation of the Eighth Amendment. Quite the contrary, these restrictions were a reasonable response to the unreasonable and unreasoning behavior of the plaintiff.

Moreover, even if Ball had stated a colorable constitutional claim relating to her wardrobe, the defendant is nevertheless entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223, 230 (2009). This doctrine, known as qualified

immunity, provides officials performing discretionary functions not only defense to

liability, but also "immunity from suit." <u>Crouse v. S. Lebanon Twp.</u>, 668 F. Supp. 2d

664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

<u>Pearson</u>, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194,

201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d

199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  <u>Pearson</u>, 555 U.S. 230-232; <u>Saucier</u>, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes

20

of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. <u>Id.</u> Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the

deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, Lt. Sipe was confronted by a difficult, obstreperous inmate, who was destroying her clothes after having previously being cited with destroying her prior clothes, and was making the receipt of new prison garb a condition of her attendance at a disciplinary hearing.  Furthermore, this dispute arose against the backdrop of case law which recognized that the courts are particularly reluctant to intervene in inmate wardrobe disputes and have rarely found that such disputes rise to the level of a constitutional infractions, declining to find that inmates have a constitutional right to particular outdoor attire or exercise garb, see Smith v. United States, 432 F. App'x 113 (3d Cir. 2011); holding that the imposition of clothing

restrictions on a recalcitrant inmate who engages in multiple episodes of misconduct does not offend the Eighth Amendment, see Trammell v. Keane, 338 F.3d 155 (2d Cir. 2003); and finding that prison officials need not accede to inmate clothing demands in this setting and may treat a refusal to follow staff directions in this regard as a refusal to participate in the disciplinary hearing itself. See Stanley v. Mason, No. 09-25, 2010 U.S. Dist. LEXIS 30178 (W.D. Mich. Mar. 29, 2010).

On these facts, Lt. Sipe could not reasonably have anticipated that imposing brief clothing restrictions upon an inmate who insists upon destroying her prison clothing would violate some clearly established constitutional right. In short, given the state of the law in this field, in this setting the defendant simply could not have recognized that these actions in declining to permit Ball to dictate the matters relating to prison attire would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, the defendant is entitled to qualified immunity on this claim.[2]

Ball cannot defeat the defendant's qualified immunity by arguing that their actions did not comport with internal Department of Corrections' policies. Such an argument is unavailing here. In this regard, it is well-settled that the doctrine of

---

[2]In appropriate cases this Court is entitled to address this qualified immunity defense *sua sponte*. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

23

qualified immunity looks to the state of constitutional case law when determining whether specific rights were clearly established. Therefore, a failure–like the failure claimed here–which simply involves alleged non-compliance with agency policies, practices, or procedures does not defeat a qualified immunity defense when the plaintiff's constitutional rights were not clearly established.  See, e.g., Davis v. Scherer, 468 U.S. 183 (1984); Bradley v. United States, 164 F.Supp.2d 437 (D.N.J. 2001).

In sum, in this case Ball's complaint presents legally bankrupt claims, leveling a series of meritless allegations, and we find that the defendant is entitled to qualified immunity on all of Ball's claims.  Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  In this case, however, we have found that Ball's complaint fails to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this complaint make it clear that she has no right to relief. Therefore, we conclude that granting further leave to amend would be futile or result

in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Accordingly, it

is recommended that the complaint be dismissed as frivolous for failure to state a

claim without further leave to amend.

While the law–and Ball's own repeated misconduct–dictates this result, we

conclude as we began with a sense of sorrow and concern for the tragic trajectory

which Ball insists on following in her life, and litigation.  Therefore, in closing we

commend to Ball the wisdom of the American humorist Will Rogers, who once

stated:  "People who fly into a rage always make a bad landing."  Here, the

unreasoning rage and vexatious pique which motivated Ball to bring this action, like

all flights of rage, has led to a bad landing, the dismissal of her claims.

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendant's motion for summary judgment, (Doc. 56.),  be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C.  §  636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set
forth in Local Rule 72.2 shall apply.  A judge shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of November, 2014.


*<u>S/Martin C.  Carlson</u>*
Martin C. Carlson
United States Magistrate Judge